Contract

for

Club Facilities Management Services

and

Business Center Catering Services

at

Philadelphia International Airport

between

US Airways, Inc.

and

Sedo Sanchez Enterprises, Inc.

# TABLE OF CONTENTS

**ARTICLE**      **PAGE**

ARTICLE 1 - DEFINITION AND STANDARD OF SERVICES ............................................. 1

ARTICLE 2 - CONSIDERATION AND PAYMENT ................................................. 2

ARTICLE 3 - TAXES ................................................. 3

ARTICLE 4 - EQUALITY OF TREATMENT ................................................. 3

ARTICLE 5 - CONTRACTOR'S EMPLOYEES ................................................. 4

ARTICLE 6 - INSURANCE ................................................. 5

ARTICLE 7 - INDEMNITY ................................................. 6

ARTICLE 8 - PERIOD OF AGREEMENT/TERMINATION ................................................. 7

ARTICLE 9 - *FORCE MAJEURE* ................................................. 7

ARTICLE 10 - NOTICES ................................................. 8

ARTICLE 11 - AUDITS ................................................. 8

ARTICLE 12 - NONDISCRIMINATION ................................................. 9

ARTICLE 13 - CONFIDENTIALITY AND WAIVER ................................................. 9

ARTICLE 14 - MISCELLANEOUS ................................................. 10

SIGNATURES ................................................. 11

## LIST OF EXHIBITS

EXHIBIT A - DEFINITION OF SERVICES - MANAGEMENT SERVICES

EXHIBIT B - RATES AND PAYMENT TERMS - MANAGEMENT SERVICES

EXHIBIT C - PRICE AND PORTION - MANAGEMENT SERVICES

EXHIBIT D - MODEL PROFIT AND LOSS STATEMENT - MANAGEMENT SERVICES

EXHIBIT E - CATERING SERVICES MENU

EXHIBIT F - LOCATION OF PERFORMANCE

## CLUB FACILITIES MANAGEMENT SERVICES AGREEMENT

This Agreement made and entered into as of the seventh day of October, 2004 by and between US Airways, Inc. (hereinafter referred to as "US Airways"), a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 2345 Crystal Drive; Arlington, VA 22227, and Sedo Sanchez Enterprises, Inc. (hereinafter referred to as "Contractor"), a corporation registered under the laws of the Commonwealth of Pennsylvania and having its principal place of business at 1176, North 3rd Street, Philadelphia, PA 19123.

### WITNESSETH

WHEREAS, US Airways is a commercial airline occupying certain leased premises at Philadelphia International Airport (hereinafter referred to as "Site" and "Airport" respectively) in which US Airways desires to provide the services of US Airways Club(s), US Airways Envoy Lounge and US Airways Business Center (hereinafter referred to as Club(s), Envoy Lounge and Business Center respectively and collectively referred to as "Club Facilities") for the accommodation of certain of its customers and other of US Airways' Club members (hereinafter referred to as "Guests");

WHEREAS, Contractor has the right to sell food and beverages within the Airport or that portion of the Airport within which the Club Facilities are located;

WHEREAS, US Airways desires that Contractor manage and operate the Club Facilities as further specified herein and provide catering services at the Business Center as further specified herein (hereinafter referred to as "Services");

WHEREAS, US Airways desires to have Contractor furnish the Services and Contractor agrees to perform such Services at the Site(s) indicated in Exhibit A under the terms and conditions of this Agreement.

NOW, THEREFORE, for and in consideration of the foregoing premises and the mutual covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE 1 - DEFINITION AND STANDARD OF SERVICES

1.1    The Services to be provided by Contractor's personnel are defined and specified in Exhibit A.

1.2    Contractor hereby represents, warrants, and agrees that all Services provided under this Agreement will conform to all applicable federal, state and other applicable statutes, regulations, ordinances, and orders, and that such statutes, regulations, ordinances, and orders will be deemed to apply to Contractor if such statutes, regulations, ordinances, and orders would apply to US Airways. Without limiting the foregoing, Contractor will comply with all applicable statute's, requirements, orders and regulations of the Federal Government and other applicable jurisdictions, pertaining to occupational safety and health including as such law may be amended, recodified, or revised, including without limitation the Occupational Safety and Health Act of 1970.

1.3    Contractor warrants that it has obtained all permits and licenses required by all applicable authorities, including but not exclusively, the Federal Aviation Administration (FAA), the Transportation Security Administration (TSA), to perform the Services specified in this Agreement and will continue, at its own expense, to be so licensed throughout the term of this Agreement.

1.4    Contractor warrants that all employees utilized by Contractor pursuant to this Agreement will be fully trained, equipped and competent and will perform their duties in a safe, courteous manner,

will work harmoniously with US Airways personnel, and will observe standards of discipline satisfactory to US Airways at all times while on the Site.

1.5    Contractor warrants that all Services provided under this Agreement will comply with rules pertaining to the applicable Site including, where applicable, the airport authority, including, but not limited to, rules concerning security, drug testing, and parking.

1.6    Except as specified in this Agreement or the Exhibits hereto, Contractor will be responsible for the acquisition, maintenance, inventory, storage, and control of all equipment, materials, supplies, and any special equipment required to perform the Services.

1.7    Contractor acknowledges and agrees that Services may be provided to US Airways at a specific Site in conjunction with Services that Contractor may provide to other parties. Notwithstanding anything contained in any other agreement to the contrary, Contractor agrees that Services provided for US Airways, its employees, agents, passengers and invitees, will be provided pursuant to the provisions of this Agreement.

1.8    Should disputes of any nature arise during the term of this Agreement, pending settlement or resolution of said dispute, both parties will proceed diligently with their performance under this Agreement. The parties acknowledge that this provision will not operate to require payment by US Airways of amounts that are the subject of the dispute. The parties further agree that this provision will not operate to limit any of the other rights and remedies provided for in this Agreement.

1.9    The Services performed hereunder by Contractor will be provided to the sole satisfaction of US Airways.

## ARTICLE 2 - CONSIDERATION AND PAYMENT

2.1    In full consideration of the performance of the Services above described, US Airways will pay Contractor in accordance with the terms and conditions set forth in this Agreement and such additional terms as specified in the exhibits hereto. Except as provided herein, the rates specified herein will remain firm for the term of this Agreement. In the event of a conflict between the contents of exhibits hereto and the body of this Agreement, the terms of the exhibit will prevail.

2.2    Contractor will submit a weekly invoice to US Airways for Services provided to US Airways during the previous one (1) week period. All invoices will specify both the applicable contract number as C PHL 0409-0016 and the purchase order or work order number applicable to the specific delivery or services, if any. The invoice will also include full documentation of the work performed, employee pay and benefit details and copies of any invoice paid by Contractor for which it invoices US Airways. Contractor agrees that it will submit no invoices or revisions to invoices more than three (3) months after Services are rendered.

2.3    Notwithstanding Article 2.2, US Airways will pay to Contractor within five (5) days of execution of this Agreement and prior to commencement of services under this Agreement thirty-five thousand dollars ($35,000.00) toward a reasonable estimate of the amount that will come due hereunder for Contractor's performance hereunder for the first two (2) weeks. After the end of the third week of performance under this Agreement, Contractor will invoice US Airways for services performed during the third week and will include any adjustments pertaining to the first two weeks of performance hereunder. Overpayments will be credited on the invoice for the third week and underpayments due to Contractor will added to that invoice.

2.4    US Airways will pay each invoice submitted by Contractor via Automated Clearing House (ACH) provided that Contractor has provided US Airways with the information required therefor

or, otherwise, via check, no later than ten (10) days from the date on which each invoice is presented to the Philadelphia US Airways Club Manager.

2.5    In the event of a dispute over the invoice, US Airways will pay all amounts that are not in dispute, and the deadline for payment for the disputed amount will be extended until ten (10) days after the resolution of such dispute.

2.6    All invoices will be sent to the address listed below or to such other addresses as US Airways may specify:

    US Airways, Inc.
    Attention: Manager, US Airways Clubs and First Class Envoy Lounge (PHL/285)
    Philadelphia International Airport
    Philadelphia, PA 19153

2.7    Except for costs specifically assigned to and assumed by US Airways under this Agreement, Contractor acknowledges and agrees that the fees under this Agreement establish the maximum liability of US Airways to Contractor for the services provided under this Agreement. In particular, Contractor assumes the following costs:

    a.    Salaries and benefits for Contractor's employees, including vacation, sick leave and severance pay.
    b.    Training to fulfill government requirements.
    c.    Securing any and all permits and licenses required to perform the Services.
    d.    Any administrative costs for scheduling. All overhead costs for local offices, support staff, headquarters staff uniforms, supplies, dosimeter badges, etc.
    e.    All insurance required under this Agreement.

## ARTICLE 3 - TAXES

3.1    In addition to the amounts charged under this Agreement, US Airways will pay any applicable sales and/or use taxes that may be lawfully imposed by the Government of the United States or any state or political subdivision thereof upon Contractor for the Services provided to US Airways under this Agreement provided Contractor promptly notifies US Airways of the imposition of such taxes. Contractor agrees that the fees paid under this Agreement will be deemed to include any value added tax or similar tax imposed by any g - ernment. US Airways will not be liable to Contractor for, and Contractor will hold US Airways harmless from, all other taxes including, without limitation, any taxes based on gross receipts, revenue, income or the like, import or export taxes, or franchise or doing business taxes. If requested by US Airways in writing, Contractor will not pay any sales or use tax assessed which is the responsibility of US Airways under this Agreement except under protest, and if payment is made, Contractor will use its best commercial efforts to obtain a refund thereof, or at US Airways' request, permit US Airways to protest such tax in Contractor's name. If all or any part of such tax is refunded, Contractor will repay to US Airways so much thereof as US Airways will have paid, including any and all interest paid thereon. US Airways will pay to Contractor, upon demand, US Airways' proportionate share of all out of pocket expenses incurred by Contractor in protesting payment of any such tax and in endeavoring to obtain such refund at US Airways' request. If US Airways paid the expenses and the refund applies to customers of Contractor other than US Airways, then Contractor will make certain that US Airways receives a reimbursement for a proportionate share of such costs.

## ARTICLE 4 - EQUALITY OF TREATMENT

4.1    Contractor agrees that in the event that any Goods and/or Services that may be provided under this Agreement are provided or offered to any third party and the charges or fees for such Goods

Contract No. C PHL 0409-0016
Date: October 7, 2004

and/or Services are less than the charges or fees under this Agreement and/or the terms more favorable, the charges and fees provided under this Agreement will be reduced to equal such lower fees and the terms of this Agreement will be adjusted to equal such more favorable treatment. Such reduction or adjustment will be in effect from the earlier of the date that such fees are offered or provided to such third party.

## ARTICLE 5 - CONTRACTOR'S EMPLOYEES

5.1    The employees of Contractor engaged in performing Services hereunder will be considered employees of Contractor for all purposes and will under no circumstances be deemed to be employees of US Airways. US Airways will have no supervisory power or control over any such Contractor's employees and any complaint or change in procedure will be transmitted by US Airways to Contractor who will in turn promptly give any necessary instructions to its own personnel.

5.2    Contractor will be responsible for the direct supervision of its employees through its designated representative and such representative will in turn, report to and confer with the designated agents of US Airways with respect to the Services.

5.3    Contractor agrees to assume full responsibility for any and all liability to its employees on account of injury, disability, and death resulting from, or sustained by said employees in the performance of the Services defined herein.

5.4    At US Airways' request, Contractor agrees that it will remove from service any employee who, in US Airways' opinion, may not be such that its basis would be a violation of applicable law in the case of dismissal of an employee, is not performing in the manner required by this Agreement as soon as a qualified replacement is available, which will not be more than twenty-four (24) hours.    At US Airways' request, Contractor will immediately remove from service any employee whose acts or omissions, in US Airways' opinion, where such opinion will not be such that its basis would be a violation of applicable law in the case of dismissal of an employee, constitute a breach of this Agreement or a violation of law.

5.5    Contractor agrees to accept full and exclusive liability for the payment of any and all taxes, contributions, and other payments for unemployment compensation and/or pension benefits, Worker's Compensation, employers liability insurance or annuities now or hereafter imposed upon employers by the government of the United States or any State or political subdivision thereof with respect to such employees, measured by the wages, salaries, compensation, or other remuneration paid to such employees, and Contractor will make such payments and will make and file any and all reports and returns and do all other things necessary to comply with the laws imposing such taxes, contributions, or other payments.

5.6    Contractor further agrees to comply with such reasonable directions as US Airways, or the Site's administrators may give, including, but not limited to, those relating to directions on parking, time of access to the Site, movement of the goods within and about the Site, safety and security. Where requested by US Airways or the appropriate Site's authority, Contractor agrees that it will require its employees to wear identification badges at all times while on the Site. Contractor acknowledges that this request may apply even where US Airways does not require the same of its own employees or other contractors. Where the Services will be performed at an airport facility, Contractor agrees that Contractor and all of its employees employed to provide the Services will be cleared by applicable airport authority and all such employees will, if required, wear identification cards issued by such airport authority.

5.7    At its own expense, Contractor will comply with all FAA and Transportation Security Administration ("TSA") regulations and requirements for selection and training of personnel that

would apply to US Airways. In particular, but not exclusively, Contractor will comply with 49 C.F.R. Parts 1542 and 1544, and/or such other directive(s) or regulations that may supplement, modify, amend or supersede it. Without limiting the foregoing, Contractor further agrees that it will cooperate with US Airways in its compliance with 49 C.F.R. § 1544.229 as directed by US Airways and will reimburse US Airways for its reasonable costs associated therewith, including the cost of conducting any resulting investigation, legal analysis, and defense of any action against US Airways taken in connection therewith, and US Airways will be permitted, at its option, to take such payment through a deduction from Contractor's invoices hereunder.

5.8    Contractor agrees and hereby undertakes to release US Airways from and against all claims for benefits offered by US Airways to its employees. Contractor agrees to indemnify US Airways for any loss or liability to US Airways arising as a result of Contractor or its employees being adjudicated or claiming to an employee of US Airways. Notwithstanding any other provision hereof, Contractor acknowledges that in the event that an action is brought against US Airways, including a complaint filed with the Equal Employment Opportunity Commission ("EEOC") or a comparable state or local agency, claiming discrimination on any basis by US Airways against any employee of or applicant for employment with Contractor, including if such employment with or application to is claimed to have been with or to US Airways, (a) US Airways will have the right to assume the defense in such action, (b) Contractor will, at its own expense, assist US Airways therewith, and (c) Contractor will reimburse US Airways for its expenses associated therewith, including the cost of its outside counsel, investigators, and the cost of US Airways' in-house legal counsel that will be deemed cost two hundred and fifty dollars ($250) per hour. Any sums that come due pursuant to this Article that remain unpaid for thirty (30) days after demand therefor may thereafter be deducted from any sums due to Contractor from US Airways.

5.9    Contractor represents and warrants that the employees used in the performance of the Services hereunder will have the qualifications, skills and experience necessary to perform the Services and will have the work record as represented to US Airways.

## ARTICLE 6 - INSURANCE

6.1    At all times during the term of this Agreement, Contractor will carry and maintain in full force and effect Workers Compensation insurance as required by applicable law covering all personnel engaged in the furnishing of Services under this Agreement, including Employers Liability Insurance in an amount not less than five hundred thousand dollars ($500,000.00). Contractor agrees to furnish US Airways with certificates evidencing this insurance required under this provision.

6.2    At all times during the term of this Agreement, Contractor will carry and maintain in full force and effect Comprehensive General Liability Insurance for bodily injury including personal injury and property damage and automobile liability coverage for owned and non-owned vehicles with a combined single limit of liability of not less than two million dollars ($2,000,000) or the maximum limit of Contractor's coverage if greater. Prior to the commencement of Services under this Agreement, Contractor agrees to furnish US Airways with certificates evidencing that Contractor has the insurance required under this provision. Each policy will (1) be primary without right of contribution from any other insurance that is carried by US Airways, (2) name US Airways and the Airport Authority as additional insureds, (3) contain a waiver of subrogation in favor of the additional insureds, (4) contain a provision requiring Contractor's insurers to provide US Airways with written notice of any cancellation or adverse material change in such insurance and that such cancellation or adverse material change will not be effective with respect to US Airways for thirty (30) days after such written notice is given, (5) contain a breach of warranty clause in favor of the additional insureds, and (6) be endorsed to insure Contractor's liability under this Agreement.

6.3     Contractor acknowledges and agrees that its failure to provide the certificates of insurance required under this provision and/or US Airways' failure to demand delivery of said certificates will not operate or be deemed to operate as a waiver of the insurance and associated endorsements required under this provision, and Contractor will hold US Airways harmless from any liability arising as a result of any such failure(s).

## ARTICLE 7 - INDEMNITY

7.1     Contractor agrees and hereby undertakes to release, indemnify, defend, and save harmless US Airways, its directors, officers, employees, and agents from and against all liability, damages, claims, suits, theft, penalties or actions of every name and description, including any and all costs and expenses related thereto, including the defense thereof, attorneys fees and court costs arising out of or resulting from the act or omission of Contractor, its directors, officers and employees, and/or in connection with the performance of this Agreement except to the extent caused by the negligence or willful misconduct of US Airways.

7.2     Contractor will indemnify, defend and hold harmless US Airways from and against any and all losses, damages, claims, liabilities, costs and expenses, including attorney's fees and court costs, that may be incurred on account of any actual or alleged infringement of any patent, trademark, copyright, trade secret or other intellectual property rights in connection with the manufacture, use or disposition of any of the goods and/or Services supplied hereunder. If the use or other disposition of the goods or the use or provision of the Services provided hereunder is enjoined as a result of any such infringement, Contractor will, at no expense to US Airways (a) obtain for US Airways and its customers the right to use, sell or otherwise dispose of the goods and/or Services; or (b) modify such goods or Services or substitute equivalent goods or Services acceptable to US Airways which modification or substitution is not infringing and to which Contractor will extend the provisions of this paragraph.

7.3     Contractor agrees and hereby undertakes to indemnify US Airways against any and all fines, penalties, and settlements from actions against US Airways for violations of FAA, TSA or other applicable federal, state, municipal, local or other governmental regulations or statutes caused by Contractor's act or omission, and reasonable attorneys' fees and court costs, except where and to the extent such violation results solely and directly from US Airways' negligence or willful misconduct. Contractor acknowledges that sums due under this section may become due both during and after the term of this Agreement. Contractor agrees to pay any amounts owed under this article within fifteen (15) days after receipt of notice in writing from US Airways or its agent. Any sums that come due pursuant to this article that remain unpaid for twenty (25) days after demand therefor may thereafter be deducted from sums due to Contractor from US Airways. Contractor agrees that in no event will the payment of any indemnity under this article or deductions from amounts owed to Contractor pursuant to this article release or excuse Contractor from its duties and obligations under this Agreement. Contractor further agrees that all decisions in the manner in which to manage, settle, defend or dispose of cases covered by this provision will be made by US Airways, in its sole discretion. Contractor acknowledges that such actions, settlements, and negotiations may take place at any time, including, but not exclusively, before formal proceedings have begun, before a complaint is issued, and both before and after any formal decision is issued. Contractor agrees to cooperate with and provide reasonable assistance to US Airways in the management of cases covered by this provision. Contractor agrees that the taxes payable by US Airways on the amounts paid by Contractor to US Airways under this provision and the taxes thereon, i.e., "the full gross up" will be added to the amount due hereunder. Contractor acknowledges that the amount of tax will be based on the federal tax rate plus the state tax rate applicable to US Airways.

## ARTICLE 8 - PERIOD OF AGREEMENT/TERMINATION

8.1    The term of this Agreement will commence on October 18, 2004 and continue until October 21, 2007, unless terminated in accordance with terms and conditions of this Agreement. Thereafter the term of this Agreement will continue until terminated by Contractor on not less than sixty (60) days notice to US Airways or as otherwise provided hereunder.

8.2    Upon written notice to Contractor from US Airways stating that Contractor is in breach of this Agreement, Contractor will immediately remedy such breach. Where Contractor fails to remedy such breach within thirty six (36) hours, to promptly initiate and continue in good faith to remedy a breach that cannot be reasonably remedied in thirty six (36) hours, or, regardless of remedy, commits a substantially similar breach more than twice in any twelve month period, US Airways will have the right to terminate this Agreement without further notice or payment to Contractor. Contractor acknowledges and agrees that this provision will not operate to limit US Airways' other remedies under this Agreement.

8.3    Notwithstanding any other provision of this Agreement, US Airways will have the right to terminate this Agreement immediately by giving Contractor written notice to that effect should US Airways determine that Services rendered by Contractor under this Agreement have become unsatisfactory, unsafe or illegal or, for any reason whatsoever, suspend or terminate operations at the Site. US Airways will have the right to terminate this Agreement without cause upon thirty (30) days prior written notice of its intention to terminate the Agreement.

8.4    Any termination under the terms of this Article will not limit any obligation or liability accrued by either party arising hereunder prior to the termination.

8.5    Except for the fees for Service provided, US Airways will not be liable for any damages or other liability as a result of the termination of this Agreement prior to the stated termination date.

8.6    Regardless of the reason for termination of this agreement, upon the request of US Airways, Contractor agrees to provide the services up to one hundred twenty (120) days from the notice of termination.

## ARTICLE 9 - FORCE MAJEURE

9.1    Notwithstanding anything to the contrary herein contained, it is agreed that either party hereto will be relieved of its obligations hereunder in the event and to the extent that performance hereof is delayed or prevented by any cause beyond its control and not caused by the party claiming relief hereunder, including, without limitation, acts of God, public enemies, war, insurrection, acts or orders of governmental authorities, fire, flood, explosion, riots, strikes or the recovery from such cause ("*force majeure*"). Contractor agrees that where relief is obtained under this provision to make its best efforts to resume Service and, where applicable, to meet the timetable for the Services specified in herein. Contractor further agrees to consult with and advise US Airways of any anticipated delay or failure, as soon as it becomes aware of such anticipated delay or failure or the possibility thereof, whether for *force majeure* or not, and, where applicable, the re-establishment of applicable timetables.

9.2    In the event that US Airways' operations at the Site are restricted by acts or orders of governmental authorities, damage to the facility or any other cause, then US Airways will have the right, upon written notice to Contractor, to suspend this Agreement while such conditions exist.

9.3    Notwithstanding any other provision of this Agreement, in the event that Contractor fails to provide the Services contracted for under this Agreement for any reason, including *force majeure*, and such failure continues for more than one (1) hour, US Airways may, at its sole option, acquire

Contract No: C-PHL-0409-0016
Date: October 7, 2004

similar Services from another provider or provide Services for itself. Contractor agrees to reimburse US Airways for the difference in cost between those specified under this Agreement and those paid by US Airways to a different service provider, except where such failure results from *force majeure*. In acquiring Service from another provider, US Airways may suspend this Agreement for a period of up to thirty (30) days longer than the condition leading to Contractor's failure to provide service or terminate this Agreement. Where such failure, regardless of cause, continues for thirty (30) or more days, then US Airways will have the right to terminate this agreement immediately upon written notice to Contractor, without any liability to Contractor by reason of such termination.

## ARTICLE 10 - NOTICES

10.1   Except where specified elsewhere in this Agreement, any and all notices, approvals or demands required or permitted to be given by the parties hereto will be sufficient if made in writing and sent by certified mail, postage prepaid or delivered by hand. Where sent by mail, such notices will also be sent by facsimile. Notices to US Airways will be addressed to:

US Airways, Inc.
Attention: Senior Buyer, Claims
Corporate Purchasing
2345 Crystal Drive
Arlington, VA. 22227
Facsimile: 703-872-6381

and to Contractor addressed to:

Sedo Sanchez Enterprises, Inc
Attention: President
1176 North 3rd Street
Philadelphia, PA. 19123
Facsimile: 215-883-1629

or to such other addresses in the United States as either party may specify by notice to the other as provided herein. Notices will be deemed served as of actual receipt.

## ARTICLE 11 - AUDITS

11.1   On a rolling three (3) year basis, as measured from the time each record is created, Contractor will keep complete and accurate books, records and documents from which may be determined the basis for billing and for compliance with this Agreement. Such books will be maintained in a fashion acceptable under Generally Accepted Accounting Practices. Such books, records, and accounts will be open for inspection, examination, audit and copying by US Airways or US Airways' authorized representatives at all reasonable times during the term of this Agreement and for three (3) years thereafter. US Airways will have the right to have its auditors, agents of the FAA, TSA, or other governmental agencies, or other business related personnel accompany its agents for such auditing. Contractor will co-operate with those conducting the audit.

11.2   On a rolling five (5) year basis, as measured from the time each record is created, Contractor will keep complete and accurate books, records and documents from which may be determined Contractor's compliance with all statutes, regulations, orders, ordinances and security programs. Such books, records, and documents will be open for inspection, examination, audit and copying by US Airways or US Airways' authorized representatives at all times during Contractor's hours of operation of any facility during the term of this Agreement and for five (5) years from its termination, regardless of the cause of that termination. Contractor agrees that at all times when a

facility is subject to audit. Contractor will have an employee on site capable of locating and gaining access to all documents subject to audit. Where Contractor no longer services a particular Site, Contractor will co-operate with US Airways in providing such access. US Airways will have the right to have its auditors, agents of the FAA, TSA or other governmental agencies, or other business related personnel accompany its agents for such audits. Contractor will co-operate with those conducting the audit. In the event of termination of this Agreement for any cause, Contractor will provide to US Airways such documentation of regulatory compliance as US Airways requests.

11.3 Contractor acknowledges and agrees that US Airways may conduct inspections of Contractor's facility and observe Contractor's performance hereunder. Contractor agrees to cooperate and assist in the conduct of such inspections. Contractor acknowledges that such inspections may be unannounced.

## ARTICLE 12 - NONDISCRIMINATION

12.1 In the performance of this Agreement, Contractor will comply with all applicable statutes, regulations, ordinances, and orders of the Federal Government and other applicable jurisdictions pertaining to nondiscrimination in employment and facilities including, without limitation, the provisions contained in Executive Order 11246, as amended and as it may be further amended in the future, titled "Equal Employment Opportunity" and in 41 C.F.R. §§ 60-1.4(a), 60-250.4 and 60-741.5(a) which are incorporated herein by reference. Contractor further agrees that it will complete and return such forms and respond to such inquires as US Airways may provide or ask in connection or related to Contractor's being or use of small, HUBZone, small disadvantaged, and women-owned small businesses for the Services under this Agreement and otherwise.

12.2 In its performance hereunder, Contractor will not discriminate on any prohibited basis, including without limitation on the basis of handicap, consistent with all federal, state and local statutes, regulations and orders, as such may be added to, amended, recodified, or revised, including, if the Services involve providing any form of service to US Airways' customers, those assigned to the air carrier thereunder, including without limitation, 14 C.F.R. Part 382 (the Regulations). Contractor further agrees to comply with the directives issued by US Airways' Complaints Resolution Official in accordance with the Regulations.

## ARTICLE 13 - CONFIDENTIALITY AND WAIVER

13.1 Confidential Information means any information, in any form, including, without limitation, the terms of this Agreement, written documents, oral communications, recordings, videos, software, databases, business plans, and electronic/magnetic media, provided to or observed by Contractor pursuant to this Agreement, including information owned or provided by US Airways and/or third parties, excepting information that is generally available to the public. Contractor agrees that it will maintain all Confidential Information in confidence and use it solely for purposes of performance under this Agreement. Such Confidential Information will be distributed within Contractor's organization only to personnel with a need to know such information for purposes relating to this Agreement or in compliance with a court order or statutory requirement. In no event will Contractor disclose any Confidential Information to any third parties except subcontractors and independent consultants and then only where approved by US Airways in advance and subject to the execution of a confidentiality agreement acceptable to US Airways.

13.2 Contractor acknowledges and agrees that any information shared or given to US Airways pursuant to this Agreement on a confidential basis may be shared by US Airways on a confidential basis with US Airways Group, Inc. and US Airways Affiliates, where US Airways Affiliates is defined as those other companies that operate under a US Airways trade name,

subsidiaries of US Airways Group, Inc., members of US Airways Express; airlines for which US Airways does purchasing and those airlines' parent corporations, and any airline(s) with which US Airways has or may have in the future an alliance, where alliance will be defined as such airline(s) and US Airways having a code-sharing agreement as that term is used in the aviation industry. Notwithstanding anything to the contrary herein, nor implying any duty of confidentiality otherwise, Contractor acknowledges and agrees that US Airways may share the terms of this Agreement as reasonably necessary in connection with the merger or potential merger, regardless of form and including by acquisition, of US Airways or its parent corporation with a third party.

13.3 Upon request by US Airways to Contractor, Contractor will immediately return to US Airways at Contractor's expense all US Airways documents and all copies of such documents in possession or under the control either directly or indirectly of Contractor or its agents. Contractor acknowledges and agrees that US Airways will have the right to exercise this right as many times as it deems necessary throughout the term and even after the termination of this Agreement, regardless of the cause of that termination.

## ARTICLE 14 - MISCELLANEOUS

14.1 Titles – Article titles and subheadings contained herein are inserted only as a matter of convenience and for reference. Such titles in no way define, limit, or describe the scope or extent of any provision of this Agreement.

14.2 Nonexclusive – Nothing in this Agreement will be deemed to act as a bar to US Airways' solicitation or purchasing Services from any other company or performing services itself at any time.

14.3 Survival – The representations, warranties and indemnities contained herein will survive the termination of this Agreement.

14.4 Severability – If, for any reason, any portion of this Agreement will be unenforceable or determined by a court of competent jurisdiction to be in violation of or contrary to any applicable statute, regulation, ordinance, order, or common law doctrine, then that portion will be of no effect. Nevertheless, the balance of the Agreement will remain in full force and effect as if such provision were never included.

14.5 No Waiver – Except as otherwise specifically provided in this Agreement, a waiver by either party of any breach of any provision of this Agreement, or either party's decision not to invoke or enforce any right under this Agreement, will not be deemed a waiver of any right or subsequent breach, and all provisions of this Agreement will remain in force.

14.6 Whole Agreement – This Agreement represents the entire agreement between the parties hereto and any additions, deletions or modifications will not be binding on either party unless accepted and approved in writing by duly authorized representatives of both parties.

14.7 Assignment – The parties herein agree and covenant, that except as specifically provided in this Agreement, that the rights and obligations established hereunder, may not be assigned in whole or in part without the prior written consent of the other, except that US Airways may assign its rights to its parent corporation, any wholly owned subsidiaries of itself or its parent corporation or any successor through merger, asset sale, operation of law or the like of itself or its parent corporation.

14.8 Choice of Law – The parties agree that this Agreement will be governed by the laws and Common Law of the United States and Commonwealth of Pennsylvania as though the entire contract were performed in Pennsylvania and without regard to Pennsylvania's conflict of laws statutes/rules

Contract No: C PHL 0409-0016
Date: October 7, 2004

The parties further agree that they consent to the exclusive jurisdiction of the Courts of Pennsylvania or the federal courts located within the Eastern District of the Commonwealth of Pennsylvania and the courts of appeal therefrom and waive any claim of lack of jurisdiction or *forum non conveniens*.

14.9     Advertising - Contractor will not use the name, trademarks, or service marks of US Airways for any purpose without the prior written consent of US Airways, which consent may be withheld in US Airways' sole discretion.

## SIGNATURES

IN WITNESS WHEREOF, US Airways, Inc. and Contractor have caused this instrument to be executed by their duly authorized representatives on the day and year first above written.

For Sedo Sanchez Enterprises, Inc.        For US Airways, Inc.

By:    Sedo Sanchez                          By:    Dave Dave

Title:    President                        Title:    Executive Vice President & Chief Financial Officer

Date:    _____               Date:    10/11/04

## MANAGEMENT SERVICES

## CLUB FACILITIES AT THE PHILADELPHIA INTERNATIONAL AIRPORT (PHL), PHILADELPHIA, PA

### 1.0    LOCATION:

Contractor will provide Services at the following location(s) at the Philadelphia International Airport, Philadelphia, Pennsylvania ("Club Facilities"):

a.    US Airways Club - B-C Concourse, a Club

b.    US Airways Club - Terminal A west, a Club/Envoy Lounge

c.    US Airways Club - Terminal F, a Club,

d.    US Airways Business Center B-C Concourse, a Business Center

### 2.0    SPECIFICATION OF SERVICES:

2.1    Contractor will provide the following Goods and Services and perform to the following standards:

2.1.1    Contractor will provide necessary personnel, including, but not limited to, one full time dedicated managers, trained bartenders, and food server/table clearer/cleaning to operate the Club Facilities as further specified herein. The manager will be dedicated to the services under this Agreement for a minimum of forty (40) hours per week. Contractor acknowledges that the number of employees to be provided will be subject to US Airways' approval. Contractor will post and provide to the US Airways Club Manager the weekly work schedule for all of Contractor's personnel assigned to work at US Airways Clubs, Lounges and Business Centers and will advise the US Airways Club Manager of revisions as they occur.

2.1.2    Contractor agrees that when service failures occur that negatively affect the service provided to customers of the Club(s) as a result of Contractor's employees not being in their assigned work areas and as determined solely the US Airways Club Manager, the amount due for the Management Fee due in the month in which such failure occurs will be reduced by fifteen percent (15%) upon notice to Contractor provided that US Airways has provided Contractor with three (3) written notifications within a rolling sixty (60) day period that Contractor's Services provided do not meet the requirements of this Agreement and the basis for that belief. Contractor agrees that upon receipt of any notice under this provision, Contractor will promptly act to remedy the matter(s) listed in such notice and provide a written plan or response to US Airways within forty-eight (48) hours of receipt of such notice detailing the action taken and/or to be taken by Contractor to remedy matter(s) raised. Contractor agrees that such plan/response will be subject to US Airways' approval, and that Contractor will take such additional action as reasonably requested by US Airways to remedy the matter raised by US Airways and to prevent its reoccurrence. US Airways agrees that it will not give notice for the same incident more than once every twenty-four (24) hours. US Airways agrees that in counting the number of notices under this provision, matters that are remedied by Contractor and based solely by the judgement of the Club Manager, within two (2) days, that do not relate to health, safety, violation of law, or damage to property, and not repeated for sixty (60) days will not be counted. The foregoing will not operate to limit any other remedy under this Agreement or law. Notifications of assessment of the penalty will be signed by both US Airways' Director of US Airways Club Operations and the US Airways Manager of Philadelphia Clubs.

2.1.3  Contractor acknowledges that US Airways will have the right to restrict access to Club Facilities to Guests as determined by US Airways.

2.1.4  Contractor will acquire and provide on a timely basis the supplies and materials to sell and provide alcoholic beverages, non-alcoholic beverages and food services of such types and in such forms as specified in Exhibit C hereto as modified from time to time by notice from US Airways to Contractor.

2.1.5  Contractor will offer to the Guests the goods specified in Exhibit C, including required preparation, at the rates specified in Exhibit C. The amounts collected pursuant to such sales will be collected by Contractor, such proceeds will only be used to pay for such reimbursable expenditures as specified in Exhibit B.

2.1.6  Contractor will present a cash register receipt to each Guest upon the purchase of each drink.

2.1.7  Contractor will furnish such bar equipment and supplies, as needed to provide the Services as approved by US Airways.

2.1.8  Contractor will serve the Goods provided pursuant to Section 3.0 of this Exhibit and clean up after completion thereof.

2.1.9  Services will be offered by Contractor in the Club Facilities during such hours of the day and days of the week as established by US Airways as specified in Section 5.0 of this Exhibit. Such hours of operation will be subject to adjustment upon ten (10) days notice to Contractor from US Airways, or less time if mandated by the applicable Airport Authority or other governmental authority.

2.1.10  Contractor will maintain high standards of sanitation and keep tables in the Club Facilities clean during the Club Facilities hours of operation and before closing. Contractor will also wash and keep clean all dishes, glassware, silverware, refrigerators and food and beverage serving equipment utilized in providing such service.

2.1.11  Contractors' employees will wear uniforms approved by US Airways while engaged in the performance of the Services specified herein. Such uniforms will be subject to change upon reasonable notice from US Airways. Such employees will not wear any pins, insignia, or other materials on their uniforms. Such employees will be required to wear their hair in fashion such that it remains above the shoulders at all times. Such employees will not be permitted to wear dangling earrings or any nose rings or other visible piercing. Contractor acknowledges that the standards of appearance for its employees will be comparable to those that US Airways specifies for its flight attendants.

2.1.12  Contractor's employees will at all times be neat, clean, courteous, polite, and orderly.

2.1.13  Contractor will be solely responsible for safeguarding all goods furnished by it or stored in or about the Club Facilities and the serving pantry, and any losses thereof will be borne by Contractor. Contractor will retain sole possession and control of the security system for alcoholic beverages.

2.1.14  Contractor will advise US Airways in a timely fashion when inventories of goods to be provided by US Airways require replenishment. Contractor agrees to use such forms as specified by US Airways for such communications under this provision.

2.1.15  Contractor will maintain regular systematic inspection by its supervisory employees on the premises to the end that the services provided hereunder will be performed in a professional manner in accordance with U.S. Food and Drug Administration (FDA), and applicable state and local requirements.

2.1.16 Contractor agrees that it will provide US Airways with the telephone numbers, pager numbers, cellular telephone numbers and facsimile numbers, as applicable, for those of Contractor's employees responsible for conducting Contractor's performance hereunder. Contractor will include with such information, emergency contact numbers such that US Airways can reach Contractor and an employee of Contractor responsible for Contractor's performance at all times. Contractor agrees that it will respond to all calls from US Airways immediately during operating hours. For each incident that Contractor fails to respond to any such call within fifteen (15) minutes, US Airways will be entitled to deduct fifty dollars ($50) from the Management Fee. US Airways will apply that deduction to either of the next two (2) payments of the Management Fee.

2.1.17 Contractor will not do or permit to be done anything that may result in the creation or commission or maintenance of a nuisance on the premises. Contractor will not do or permit to be done any act in or upon the premises (i) which will invalidate or conflict with any fire insurance policies covering the premises or any part thereof, or (ii) which may constitute an extra-hazardous condition, so as to increase the risks normally attendant in the operations specified in this Agreement.

2.1.18 Neither Contractor nor employees of Contractor will use or permit any person to use the Club Facilities' premises or any portion thereof for any purpose other than those specified herein.

2.1.19 Contractor will operate the Club Facilities in a "first class" manner.

2.1.20 Contractor will not incur overtime pay to its workforce, if such overtime is to be invoiced to US Airways, without the prior approval of the US Airways Club Manager or their designee. Contractor, when unable to reasonably obtain prior approval for overtime pay to its workforce and when such overtime pay is required to avoid service failures, Contractor will advise the Club Manager no later than the start of business the following day. Contractor acknowledges that for normal operations there shall be no overtime pay charged to US Airways Clubs.

2.1.21 Contractor expressly covenants and agrees to meet, perform and discharge at Contractor's expense each and every obligation imposed on either US Airways or Contractor, by the Federal and state statutes on intoxicating liquors, the regulations of the Federal and state licensing authorities issued from time to time thereunder, and all local laws, ordinances and regulations including, without limitation, obtaining and maintaining all licenses, retail liquor dealer stamps, or permits required by law to permit sales of alcoholic beverages in said Club Facilities, as provided hereunder, and compliance with all tax obligations which may be applicable.

**3.0    CATERING SERVICES**

3.1    Contractor will offer for sale to US Airways for service to US Airways and/or Guest the goods specified in Exhibit E hereto at the prices specified there. Contractor acknowledges and agrees that Exhibit E hereto may be modified from time to time by notice from US Airways to Contractor, where such changes will be reasonable and with not less than ten (10) days notice. Contractor may specify modifications to the pricing specified in Section 7 in response to and based on such changes provided that Contractor provides reasonable documentation of such changes.

3.2    US Airways may place orders with Contractor for delivery at any time during the hours of operation of the US Airways Business Center B-C Concourse ("Business Center"). Contractor will deliver the goods at the time and the location specified in the order, orders that are not placed in advanced will be delivered as soon as possible to the Business Center but not to exceed one hour from placement of order. For each fifteen (15) minutes an order is delivered late US Airways will have the right, reduce the management fee (as detailed in Exhibit B) by fifty ($50) dollars. Contractor acknowledges that while it is intended that most Goods and Services

provided under this Section 3.0 of this Exhibit will be delivered to and at the Business Center, such Services will be delivered to such other locations with the Philadelphia International Airport as requested by US Airways. If the location of the delivery is other then the Business Center the fifty ($50) charge will not apply. Contractor agrees to use its best efforts to delivery on a timely basis.

3.3     US Airways may request special food and beverage services with a minimum of forty-eight (48) hours advance notice to Contractor, and Contractor will make its best efforts to provide the special service, including the purchase of food and beverages for promotional purposes. Where Contractor will be unable to comply with such request it will advise US Airways as soon as possible of such inability and the cause thereof. The price for such service will be as specified by Contractor based on reasonable documentation therefor.

3.4     If the US Airways Club Manager or his/her designee reasonably determines the food of a particular order to be of less then consistent quality Caterer will not charge US Airways for the related item.

3.5     US Airways will, at is own expense, provide items such as chinaware, glassware, silverware, etc.

## 4.0     PRODUCTS AND SERVICES TO BE PROVIDED BY AIRLINE

4.1     US Airways agrees to perform the following duties, and will have the following specified rights:

4.1.1   Title to all equipment furnished or paid for, including by reimbursement to Contractor, by US Airways will remain in or pass to US Airways.

4.1.2   US Airways will have the right, upon reasonable notice, but not less than ten (10) days, to Contractor to temporarily or permanently close all or part of the Club Facilities, including to facilitate updating, modification, alterations and/or redecorating of the Club Facilities. US Airways will have the right to relocate and/or change the name of the Club Facilities. The notice period specified in this provision may be shortened in the event that such closure is required by law or is, in US Airways reasonable opinion, required for safety.

4.1.3   US Airways will, at its own expense, provide necessary maintenance and repairs to all said equipment installed by it. Contractor will reimburse US Airways for any expenses related to the repair, maintenance or replacement of any equipment provided by US Airways where such need results from the act or omissions of Contractor or its employees, officers, or agents.

4.1.4   US Airways will, at is own expense, provide items such as chinaware, glassware, silverware, etc., as specified in Exhibit C, which may be amended from time to time by notice from US Airways to Contractor.

4.1.5   Except as otherwise specified herein, US Airways will, at its expense, provide all utilities, maintenance and cleaning of the Club Facilities.

4.1.6   Except for food and beverages to be provided by Contractor, US Airways will provide all consumable supplies for the Club Facilities. An initial stock of such consumable supplies will be established by US Airways. This stock is to be kept at a relatively constant level through purchases by US Airways of any item necessary to maintain the stock. US Airways may, upon giving notice to Contractor, require that Contractor purchase such items of expendable equipment and supplies and in such cases the cost of such items will be considered a reimbursable expenditure for purposes of this Agreement. Contractor acknowledges and agrees that any supplies, materials or goods to be provided by Contractor pursuant to this Agreement may, at US Airways' option, be provided by US Airways.

4.1.7   Contractor acknowledges and agrees that US Airways has the right to subcontract and/or delegate any of its responsibilities specified in this Agreement.

4.1.8  Contractor acknowledges and agrees that US Airways will have the right to perform for itself any function of the Club Facilities. In the event that US Airways decides to exercise this option and Contractor is already performing said function, US Airways will provide Contractor with not less than thirty (30) days notice.

4.1.9  Contractor acknowledges and agrees that US Airways has and reserves the right to perform and/or have performed any other activities and/or provide other services within the Club Facilities.

4.1.10  Contractor acknowledges and agrees that employees or agents designated by US Airways may enter in and upon the premise to inspect Contractor's operations at any and all times.

4.1.11  US Airways will have the right to provide one or more individuals who will function as host(s)/hostess(es) for the Club Facilities and will monitor and restrict who may enter the Club Facilities according to rules determined by US Airways, where such rules will be subject to change. Such individual(s) may or may not perform such other functions as determined by US Airways.

4.1.12  Upon the commencement of this Agreement, US Airways will designate one person to represent US Airways (hereinafter "US Airways' Representative") and Contractor will designate one person to represent Contractor (hereinafter "Contractor's Representative") in all matters pertaining to: (a) desired changes in the service, menus, operating policy, rules or standards pertinent to the beverage service in the Club Facilities; (b) replacement of equipment, building maintenance and/or decoration, building repairs and similar matters in or for the Club Facilities; and (c) such other matters as are specifically identified within the terms of this Agreement. At any time during the term of this Agreement either party may change its representative by giving the notice to the other party. The authority of the representatives designated pursuant to this provision will be limited to the matters set forth herein and no such representative will be otherwise authorized to bind his principal.

4.1.13  US Airways' Representative or his/her designee will have the right at all times to enter upon the Club Facilities and such other locations as Contractor may perform hereunder.

**5.0  DAILY SCHEDULE:**

5.1  The daily hours of operation of the Club Facilities at the inception of this Agreement will be:

a.  US Airways Club - B-C Concourse - 5:30 a.m. - 10:30 p.m. seven days a week. The wet bar will be open from 11:00 am until closing time.

b.  Club/Envoy Lounge A-West - Subject to Section 5.3 of this exhibit, 11:30 a.m. to 10:00 p.m. seven days a week with the wet bar open at all time while this facility is open.

c.  US Airways Club - Terminal F - 5:30 a.m. - 10:00 p.m. seven days a week. The wet bar will be open from 11:00 a.m. until closing time.

d.  Business Center - 7:00 a.m. - 7:00 p.m. Monday through Friday.

5.2  Contractor acknowledges that US Airways may change the schedule specified in Section 5.1 of this Exhibit A upon reasonable notice to Contractor.

5.3  Contractor acknowledges that the Club/Envoy Lounge at A-West will remain open and staffed after 10:00 p.m. until the last international flight has departed unless otherwise directed by the US Airways Club Manager.

## RATES AND PAYMENT TERMS FOR MANAGEMENT SERVICES

### CLUB FACILITIES AT THE PHILADELPHIA INTERNATIONAL AIRPORT (PHL), PHILADELPHIA, PA

**1.0    REIMBURSABLE EXPENSE**

1.1    US Airways will pay and/or reimburse Contractor for the following reimbursable expenses:

1.1.1    An amount equal to Contractor's direct cost of all food, beverage and operating supplies purchased by Contractor and provided by Contractor in connection with this Agreement. Such amount will be adjusted downward by any discount, rebate or other reduction in cost acquired by Contractor. In the event liquor, beer, and/or wine usage in the Club(s) exceeds reported liquor, beer, and/or wine sales in the Club(s), Contractor will reimburse US Airways the total cost of the discrepant amount which has been substantiated according to the following formula, to be applied separately for each item specified in Exhibit C:

$$CV = PA (BS + IS - ES - SS - A - DW)$$

Where:

CV = Total allowable cost of item variance for the period.

PA = The cost per serving specified in Exhibit C.

BS = Beginning inventory servings for the period.

IS = Number of new servings issued for the period.

ES = Ending inventory servings for the period.

SS = Servings sold for the period.

A = 5% of total servings sold for the period.

DW = Documented waste (spills, over pours, etc.).

The total period variances will be reconciled on a weekly basis.

1.1.2    The liquor, beer, and wine served in the Envoy Lounge are complimentary to the Guests. Contractor will be responsible for the inventory and control of these alcoholic beverages. US Airways will pay Contractor each week based on the amount of alcohol released from inventory and distributed to the Lounge. The US Airways Club Manager or their designees will sign-off on a predetermined schedule (at a minimum once a week) the amount of alcohol provided to the Lounge. This "sign off" report will be provided as support for the weekly billings of alcoholic beverages to the Lounge by Contractor.

1.1.3    The cost of all wages and salaries, but not tips, of Contractor's personnel engaged in performing services in and for the said Club Facilities operation, but not under Section 3.0 of Exhibit A. Wages and salaries will be computed by multiplying the actual total time expended by such Contractor's personnel by the applicable pay rate, which will include payroll taxes, Workers' Compensation premiums, vacations, sick benefits, 401K plans, group medical disability and life plans, pension and retirement funds, and any other costs. A detailed summary of these costs will be submitted to US Airways. In the event that these costs change for any reason Contractor will provide US Airways with written notice of such change within thirty (30) days. Contractor will also supply US Airways with a copy of all new labor agreements, Contractor's company policies, procedures and work rules. Contractor acknowledges and agrees that, except as mandated by law, the costs summitted to US Airways will remain firm or lower for the term of this Agreement.

1.1.4   The cost of a reasonable number of uniforms to be worn by Contractor's personnel working in the Club Facilities when requested in writing and approved by the Club Manager or their designee in advance of incurring such costs. Contractor will present receipts or invoices for such purchases that were paid for or reimbursed by Contractor to Contractor's employees.

1.1.5   The cost of airport parking fees for Contractor's employees working in the Club Facilities. Said parking fees will be based on parking charges by the Airport for parking in areas designated as "airport employee parking".

1.1.6   The cost of all expenditures made by Contractor for repairs, replacements, cleaning and maintenance of fixtures, furnishings, furniture, equipment and uniforms in and for the said Club Facilities operation that are specifically requested in writing by US Airways and approved in advance by US Airways.

1.1.7   The cost of all utilities, services, licenses and permits and similar costs incurred by Contractor in connection with this Agreement.

1.1.8   The cost of any sales, use or beverage taxes and any rentals and concession fees incurred by Contractor in connection with this Agreement.

1.1.9   A weekly Management Fee of three thousand three hundred and eight dollars ($3,308.00).

## 2.0   Weekly or Monthly Report

2.1   Contractor's invoices will provide a detailed accounting of each item of reimbursable expense as specified in this Agreement. The format for such accounting is provided in Exhibit D, but is subject to change upon notice to Contractor from US Airways. Contractor will pay to US Airways with such accounting the amount by which the gross revenues from the operation of the Clubs exceed the amount due to Contractor under this Agreement. In the event that gross revenues are insufficient to pay the total of such fees and expenses, Contractor will invoice US Airways for the amount then remaining to be paid. Contractor agrees that the services provided at each Club Facility and Section 3.0 of Exhibit A will be reported separately.

EXHIBIT C
Page 1 of 3

## PRICE AND PORTION MANAGEMENT SERVICES

## CLUB FACILITIES AT THE PHILADELPHIA INTERNATIONAL AIRPORT (PHL), PHILADELPHIA, PA

1.0 **BAR MENU/PORTIONS**

    1.1    **CLUB (S)**

    1.1.1    Contractor will serve the following brands in the portions specified in the Clubs and charge the specified prices therefor. Contractor will not make substitution for these items without US Airways' prior written consent.

    A.  **LIQUOR** - 1 1/4 oz. portion ............................................ $5.00 per serving

      1.  Scotch - Chivas Regal, Dewars White Label, and J&B Rare
      2.  Gin - Tanqueray, Beefeater, and Bombay
      3.  Bourbon - Jack Daniel's (Black Label), Old Grand Dad, and Jim Beam
      4.  Vodka - Stolichnaya, Absolut, and Smirnoff
      5.  Rye & Blends - Crown Royal, Canadian Club, and Seagram's 7
      6.  Rum - Bacardi (White)
      7.  Irish Whiskey - John Jameson
      8.  Tequila - Jose Cuervo Gold
      9.  Vermouth - Martini & Rossi Dry and Martini & Rossi Sweet

    B.  **WINES** - 6 oz. portion .................................................. $4.00 per glass

      1.  Beringer Chardonnay (750 ml. bottle)
      2.  Beringer Zinfandel (750 ml. bottle)
      3.  Beringer Merlot (750 ml. bottle)
      4.  Beringer Cabernet Savignon (750 ml. bottle)

    C.  **COGNAC AND BRANDY** - 1 1/4 oz. portion ................ $5.00 per serving

      1.  Courvoisier

    D.  **LIQUEURS & CORDIALS** - 1 1/4 oz. portion ................ $5.00 per serving

      1.  Bailey's Irish Cream
      2.  Kahlua
      3.  Triple Sec

    E.  **BEER** - 12 oz. portion

      1.  Draft Beer - Michelob, Miller Lite ........................... $4.00 per glass
      2.  Premium Bottled Beer - Heineken, Samuel Adams,
         Local microbrew (as directed by US Airways) ........ $4.00 per bottle
      3.  Domestic Bottled Beer - Michelob, and Miller Lite ....... $4.00 per bottle
      4.  Non-alcoholic beer - O'Doul's ................................. $4.00 per bottle

    F.  **Soda/Juices/Bottled Water/Food**

    Miscellaneous sodas, juices, bottled water and food ........... Complimentary

    Contractor acknowledges and agrees that despite sodas, juices bottled water and food being provided on a complimentary basis, their provision is a material element of this Agreement.

EXHIBIT C
Page 2 of 3

### 1.2 ENVOY LOUNGE

Contractor will provide the following items for the First Class/Envoy Lounge. These items will be offered on a complimentary and self-serve to Guests in that facility.

**A. LIQUOR**

1. Scotch - Chivas Regal, Dewars White Label, and J&B Rare
2. Gin - Tanqueray and Beefeater
3. Bourbon - Jack Daniel's (Black Label), and Jim Beam
4. Vodka - Stolichnaya and Absolut
5. Rye & Blends - Crown Royal, Canadian Club, and Seagram's 7
6. Rum - Bacardi (White)
7. Irish Whiskey - John Jameson
8. Tequila - Jose Cuervo Gold

**B. WINES**

Contractor will provide wines in two (2) rotations. Each rotation will be in effect for a period of four months as directed by US Airways.

1. Rotation #1 - K J Vintners Zinfandel, Cuvee Latour - White, and Mouton Cadet -bord- red
2. Rotation #2 - KJ Grand Reserve Chard '94, B &G - St. Emillion, Domain De La Ferr - Merlot, and Clos Du Val Zinfandel
3. Contractor may substitute the following wines on an as needed basis

    a) LaTour Chardonnay - White, for Cuvee Latour or B&G - St. Emillion
    b) Kenwood Zinfandel for KJ Vinters Zinvandel or KJ Grand Reserve Chardonnay.

**C. COGNAC AND BRANDY**

1. E & J Brandy

**D. LIQUEURS & CORDIALS**

1. Amaretto DiSaronno
2. Bailey's Irish Cream
3. Kahlua

**E. BEER**

Contractor will provide beer in three (3) rotations. Each rotation will be in effect for a period of four months as directed by US Airways.

1. Rotation #1 - Sam Adams, Coors Light, Becks, Heineken
2. Rotation #2 - Penn Pilsner, Amstel Light, St. Pauli Girl, Molson Golden
3. Rotation #3 - Lowenbrau, Moretti, Kronenbourg, Miller Lite

## 2.0 US AIRWAYS GLASSWARE

Contractor will serve beverages in US Airways glassware as follows:

1. Wine - In a Wine Glass (8-1/2 oz.) straight up and on-the-rocks.
2. Cocktails - In an All-Purpose Glass (8 oz.) straight up and on-the-rocks.
3. Juices and Sodas - In an All-Purpose Glass (8 oz.) straight up and on-the-rocks.

**EXHIBIT C**
**Page 3 of 3**

4.     Bloody Mary, Virgin Mary, Draft Beer, and Bottled Beer – In a Beer Glass (12 oz.)

## 3.0   SUPPLIES

Contractor will provide and use the following bar mixes, food, and other supplies:

1. Bloody Mary Mix
2. Sweet & Sour Mix
3. Orange Juice
4. Tomato Juice
5. Grapefruit Juice
6. Lime Juice
7. Bitters
8. Apple Juice
9. Unsweetened Ice Tea
10. Cranberry Juice
11. Grenadine
12. Coca-Cola – Bag & Box
13. Diet Coke – Bag & Box
14. Sprite – Bag & box
15. Diet Sprite – Bag & Box
16. Ginger Ale – Bag & Box
17. Tonic Water – Bag & Box
18. Salt
19. Pepper
20. Worchestshire Sauce
21. Tabasco
22. Olives – 110 – 120 count
23. Lemons – 95 count
24. Onions – Jumbo – 2A (Portion 1 ea.)
25. Cherries – 450-600 stem
26. Limes – 72 count
27. Glass Cleaner
28. Delimer
29. Dish Soap/Rinse Agent/Sanitizer
30. Coffee Urn Cleaner
31. Plastic Wrap
32. CO₂ Tank
33. Wrapped Straws
34. Swizzle Sticks
35. Disposable Hand Towels
36. Register Tape
37. Vinegar

## MODEL PRICE AND LOSS STATEMENT

### MANAGEMENT SERVICES

### CLUB FACILITIES AT THE PHILADELPHIA INTERNATIONAL AIRPORT (PHL), PHILADELPHIA, PA

The following are samples of the forms that Contractor will use in providing monthly statements to US Airways.

**STATEMENT FOR THE PERIOD**
FROM _____ TO _____

**GROSS REVENUES $_____**

| | Amount | % of Net Revenues |
|---|---|---|
| 1. Net Revenues Operating Costs: | $_____ | 100% |
| 2. Cost of sales (see page 2) | | |
|    a.   Liquor | $_____ | _____ |
|    b.   Wine | _____ | _____ |
|    c.   Beer | _____ | _____ |
|    d.   Mixers and other | _____ | _____ |
| 3. Rental expense | _____ | |
| 4. Concession fees on reimbursable costs and profit sharing and taxes thereon | _____ | _____ |
| 5. Other costs | _____ | _____ |
| 6. Management fee | _____ | _____ |
| 7. Labor Costs: | | |
|    a. Wages at prevailing rates including fringe benefits | _____ | _____ |
|    b. Wages paid at premium including fringe benefits | _____ | _____ |
| 8. Total operating costs (lines 2 through 7b) | _____ | _____ |
| 9. Operating profit (loss) (line 1 less line 8) | _____ | _____ |

If line 9 shows operating **profit**, complete line 10.
If line 9 shows operating **loss**, complete line 11.

**DUE TO (FROM) AIRLINE**

| | | |
|---|---|---|
| 10. Operating profit per line 9 (see Note 2) | $_____ | |
| 11. Operating (loss) per line 9 | (_____) | _____ |
| 12. Reimbursable costs | (_____) | _____ |
| 13. Total Due to (from) Airline (lines 10 through 12) | _____ | _____ |

**STATEMENT FOR THE PERIOD**
**FROM _____ TO _____**
**(Supplementary Data)**

<u>Cost of Sales</u>                                                                                    <u>Amount</u>

a.  Liquor
    Beginning inventory              $ _____
    Add: requisitions                  _____
    Less: ending inventory             _____
    Cost of sales
                                                                    $ _____
                                                            (enter on page 1, line 2a)

b.  Wine
    Beginning inventory              $ _____
    Add: requisitions                  _____
    Less: ending inventory             _____
    Cost of sales
                                                                    $ _____
                                                            (enter on page 1, line 2b)

c.  Beer
    Beginning inventory              $ _____
    Add: requisitions                  _____
    Less: ending inventory
    Cost of sales
                                                                    $ _____
                                                            (enter on page 1, line 2c)

d.  Mixes and other
        Cost of mixes, soft drinks,
        garnishes, ice, etc.
                                                                    $ _____
                                                            (enter on page 1, line 2d)

<u>Other Costs</u>                                                                                   <u>Amount</u>

Description
Uniforms (if provided by Manager)                                   $ _____
Uniform cleaning allowance to employee                                _____
Licenses, fees, taxes                                                 _____
Cash register rental                                                  _____
Cash and shift envelopes                                              _____
Cash register and adding machine tapes                                _____

                        Total   (enter on page 1, line 5)            $ _____

## STATEMENT FOR THE PERIOD
FROM _____ TO _____

LABOR COSTS

| Wages (indicate overtime and holiday pay separately) | | Prevailing Rates | | | | Premium pay as directed by Airline |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) Excess Contract Over Contract Pay | (7) Excess Over Contract Pay |
| Name | Job | No. of Hours | Contract Rate | (3) x (4) Rate | Contract Pay (5) x (6) | |
| ___ | ___ | ___ | ___ | ___ | | |
| ___ | ___ | ___ | ___ | ___ | | |
| ___ | ___ | ___ | ___ | ___ | | |
| ___ | ___ | ___ | ___ | ___ | | |

**TOTAL** _____ _____

| Associated payroll expenses | Rate | Base hours, wages, etc. | Base ($ of wages) |
|---|---|---|---|
| Payroll taxes | | | |
| FICA | ___ | ___ ___ | ___ ___ |
| FUTA | ___ | ___ ___ | ___ ___ |
| State | ___ | ___ ___ | ___ |
| Workers compensation | | ___ ___ | |
| Vacation and sick leave accrual | ___ | ___ ___ | ___ ___ |
| Union health/welfare | ___ | ___ | ___ |
| Pension | ___ | ___ ___ | ___ ___ |
| Meal allowance | ___ | ___ ___ | ___ ___ |
| Parking | ___ | ___ ___ | ___ ___ |
| Other (specify) | ___ | ___ ___ | ___ ___ |
| ___ | ___ | ___ ___ | ___ ___ |
| ___ | ___ | ___ ___ | ___ ___ |
| Total associated payroll expenses | | | |
| Total labor costs | | * | ** |

*enter on page 1, line 7(a) **enter on page 1, line 7(b)

**STATEMENT FOR THE PERIOD**
**FROM _____ TO _____**
(Supplementary Data)

Reimbursable Costs

    Consumable Supplies

| Type | Amount |
|------|--------|
| Coffee | $ _____ |
| Cocktail napkin | _____ |
| Glassware | _____ |
| Cleaning supplies | _____ |
| Plastic goods (sword picks, beverage stirrers) | _____ |
| Matches | _____ |
| Cocktail snacks | _____ |
| Sweet rolls | _____ |
| China | _____ |
| Silver | _____ |

                         Total                 $ _____

Other costs incurred by Contractor at US Airways' request

    Maintenance              $ _____
    Cleaning services      _____

    Total Other               $ _____

Total Reimbursable Costs          $ _____
                               (enter on page 1, line 12)

## CATERING SERVICES MENU

### CLUB FACILITIES AT THE PHILADELPHIA INTERNATIONAL AIRPORT (PHL), PHILADELPHIA, PA

A. Breakfast
Mini Pastry Basket (18 Assortment pieces) ..................... $20.25
Breakfast Tray - Assortment of 6 Bagels, 3 Danishes and 3 Muffins ..... $16.20
Bistro Club .................................. $8.05
Bagel Sandwich with eggs and bacon or sausage or ham ........... $5.85

B. Appetizers
Bruschetta ................................. $6.25
Mozzarella Caprese .......................... $7.15
Homemade Soup of the Day ..................... $5.60

C. Salads:
Fresh Fruit Salad ........................... $5.35
House Salad ................................. $5.85
Classic Caesar .............................. $5.85
Chicken Caesar .............................. $7.15
Tuna Tuscana ................................ $8.05
Antipasto ................................... $8.05
Rotini Pasta Salad .......................... $7.65

D. Paninis and Parmigianas:
Chicken Caesar .............................. $6.25
Turkey Italia ............................... $6.75
Ultimate Italian ............................ $6.75
Tuna Salad Foccacia ......................... $6.25
Chicken Salad Foccacia ...................... $6.25
Chicken Pita ................................ $6.25

E. Wraps:
Turkey Wrap ................................. $6.25
Chicken Fajita Wrap ......................... $6.25
Chicken Caesar Wrap ......................... $6.25
Italian Wrap ................................ $6.75
Tuna Tuscana Wrap ........................... $6.25

## LOCATION OF PERFORMANCE

1.1 **Location of Performance** - Contractor will perform the Services at the Site specified in Exhibit A. Contractor acknowledges and agrees that US Airways may alter the Site as US Airways deems fit and may change the Site to a different Site on a temporary or permanent basis in its discretion. Contractor acknowledges that it will have no possessory interest, right to use, or title to the Site.

1.2 **Use of Site** - Contractor acknowledges and agrees that it will not without the prior written consent of US Airways, where such consent may be withheld in US Airways' discretion, (a) perform services for any other party at the Site, (b) engage in any activities not covered by this Agreement at the Site, nor (c) permit any third party to engage in any activities at the Site.

1.3 **Landlord Approval** - Contractor acknowledges and agrees that US Airways may hold the Site via leasehold and that Contractor will (a) comply with the terms of US Airways' tenancy at the Site, and (b) indemnify US Airways for any liability that US Airways may incur as a result of Contractor's failure to do so. Contractor further acknowledges that this Agreement may be subject to the prior and/or continuing approval of US Airways' landlord and that this Agreement will terminate in the event that such approval is not granted or is withdrawn.

1.4 **Entry and Inspection** - Contractor acknowledges and agrees that US Airways will have the right to enter and inspect the Site at all times, and will be permitted to close or bar access to portions of the Site as needed to maintain the Site.

1.5 **Modification to Facilities** - Contractor acknowledges that any modifications to the Site will be subject to US Airways' prior written consent. Any expense associated with modifications made to the Site, including but not limited to, signage to accommodate Contractor's operation will be borne by Contractor. Contractor agrees that all such modifications, including signage, will comply with the airport authority's rules relating thereto. Contractor also agrees to restore such facility to its original specifications upon termination of this Agreement or upon movement to another area. Where such restoration has not been completed within twenty (20) days of the termination hereof or removal thereof, US Airways will be permitted to perform such restoration itself or by a contractor of its choosing at Contractor's expense.

1.6 **Installation of Equipment** - Computer terminals, Teletype, and other equipment required by Contractor will be installed and maintained at Contractor's expense. The expense of modifying any of US Airways' facilities or the Facility in order to install such equipment will be borne entirely by Contractor. The installation of all such equipment or facility modifications will require the prior written approval of US Airways. Upon termination of this Agreement, Contractor will, at its sole expense, remove all such equipment and restore the facility to its original condition. Where such restoration has not been completed within twenty (20) days of the termination hereof, US Airways will be permitted to perform such restoration itself or by a contractor of its choosing at Contractor's expense.

1.7 **Termination** - Upon termination of this Agreement, Contractor will, at its sole cost and expense, remove itself and all trade fixtures, furnishings, property, equipment or machinery installed or placed by Contractor in and upon the Site. Contractor will, at its sole cost and expense, repair any damage occasioned by such removal.

1.8 **Maintenance of Site** - Contractor will maintain the Site in a safe, neat, clean and broom swept condition at all time and will promptly report any damages to the Site to US Airways. If the damage was caused by Contractor, at US Airways' option, Contractor will either repair such damages at its own expense or reimburse US Airways for the cost thereof. If the damage was not caused by Contractor, as reasonably determined by US Airways, US Airways will arrange for the applicable repairs.

1.9 **Utilities at Site** - US Airways will provide utilities to the Site and US Airways will pay the cost of the same. US Airways assumes no liability for, and Contractor hereby releases and waives any

claims against US Airways and US Airways' landlord resulting from any failure or interruption of any such services or utilities furnished to the premises, unless such failure or interruption is caused by the willful misconduct of US Airways.